**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Renaldo BOYD, Defendant-Appellant.**

No. 43781.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 13, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 20, 1981.

Application to Transfer Denied
Jan. 18, 1982.

Mary C. Dames, Asst. Public Defender, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

Appellant appeals from a conviction of burglary in the second degree, § 569.170, RSMo 1978. He was sentenced to twelve years in the Missouri Department of Corrections. The judgment is affirmed.

Appellant raises two points on appeal. First, appellant asserts that the evidence was insufficient to sustain the verdict. Second, appellant claims that the trial court erred in refusing to give appellant's offered instruction on trespass in the first degree as a lesser included offense of burglary in the second degree.

In determining the sufficiency of the evidence this court considers as true the evidence most favorable to the state and all favorable inferences to be drawn therefrom and disregards all evidence to the contrary. *State v. Alexander*, 581 S.W.2d 389, 390[1] (Mo.App.1979).

The state's evidence in this case is entirely circumstantial. On February 12, 1980 at approximately 7:30 p. m. a black man came up to the door of Mary Jane Peters' home in Creve Coeur, St. Louis County, Missouri. Mrs. Peters later identified that man as the appellant. Mrs. Peters lived roughly three-fourths of a mile from the site of the burglary. The appellant came up to Mrs. Peters' door and asked for the names of her various neighbors, explaining that he and his companion were invited to a party but could not remember the name of the host or his address. Mrs. Peters gave him the name of one of her next-door neighbors and then directed him to that neighbor's house. Appellant told her he would go there. Instead appellant drove his automobile in the opposite direction. Becoming suspicious, Mrs. Peters called the police and reported the incident.

Shortly after Mrs. Peters' call, Officer Glenn Eidman of the Creve Coeur police patrolled the streets near Mrs. Peters' home. During this patrol he saw a vehicle in front of the residence located at 11528 Lakeshore Drive. Officer Eidman turned his spotlight on the car and took down the license plate number. The car turned out to be registered to appellant's brother.

About the time of Officer Eidman's investigation Richard Dear, a guest at the residence located at 229 New Salem, saw two black men running across some common ground located between the rear of the 11528 Lakeshore Drive residence and the rear of 229 New Salem. The two men came within 10 to 15 yards of Dear. One of the men fit appellant's description. The two men split up. One ran down the driveway at 229 New Salem, and across the street. Dear called the police. Dear testified that there was eight inches of snow on the ground that night.

Officer Michael Molitor responded to Dear's call. Dear showed Officer Molitor where the man's footprints in the snow started across from 229 New Salem. The only other set of footprints across the street were roughly 10 to 15 feet from the set Dear pointed out. Officer Molitor followed those footprints to a wooded area where he found appellant lying in some bushes. Officer Molitor testified that there were no other footprints in the wooded area. When asked what he was doing there appellant told Officer Molitor that he had been visiting a girlfriend whose name and address he could not remember and that he had been robbed and then left in the woods. Later appellant told the police he had been hunting.

Officer Molitor, after turning custody of appellant over to another officer, returned to 229 New Salem. He backtracked the footprints of the men that ran past Dear. They were the only sets of footprints in the snow. The tracks led to the patio door of the 11528 Lakeshore Drive residence. The door had been broken into; water and snow were on the floor inside of the door. The house had been vacant for two weeks. Upon inspecting the house the officer found that it had been ransacked. In the bedroom he found jewelry stuffed into pillow cases. Officer Molitor also found footprints leading from the patio door back to the car parked in front of 11528 Lakeshore Drive. When the owner of the house returned he reported that nothing was missing. The owner had not given appellant permission to enter his house.

Appellant offered no evidence in his defense.

Appellant's first point on appeal is that the evidence is insufficient to sustain a guilty verdict. The point is ruled against appellant.

■ A submissible case may be made out based solely on circumstantial evidence if the facts and circumstances are consistent with each other, consistent with the hypothesis of the appellant's guilt, inconsistent with the hypothesis of innocence, and clearly point to the accused's guilt so as to preclude any reasonable hypothesis of innocence. However, the facts and circumstances do not have to conclusively prove guilt or totally eliminate the possibility of innocence. *State v. Lenza*, 582 S.W.2d 703, 707[1] (Mo.App.1979) *cert. denied* 444 U.S. 1021, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980); *State v. Alexander*, 581 S.W.2d 389, 390[2, 3] (Mo.App.1979). This court's review on this issue is limited to whether substantial evidence supports the jury's verdict. This court does not substitute its judgment for that of the jury; nor does this court weigh the evidence. *State v. Clark*, 596 S.W.2d 747, 749[1–4] (Mo.App.1980).

■ This court finds substantial evidence to support the jury's verdict. There clearly is evidence of a burglary. The footprints led directly from the car in front of the burglarized house to the point of entry into the house and then to the spot in the woods where the officer found appellant. Appellant also had no reasonable explanation for why he was in the woods. Possible hypotheses of innocence must posit that appellant just happened to be at the end of the trail in the woods without making any other trail of his own in the snow. He could not have been in the woods before it snowed because he was at Mrs. Peters' door just a few minutes earlier. Other hypotheses of innocence must posit that another burglar broke into the house and half-robbed it, that appellant just happened to stop at the burglarized, half-robbed house, that he just happened to walk directly to the same door that the earlier burglar broke into, that he ran away and lay down in some bushes for some reason other than consciousness of guilt, and that he told two inconsistent and implausible stories to the police for some reason other than to avoid punishment. Neither alternative hypothesis of innocence is reasonable.

Appellant argues the footprints are of no probative value because the officer failed to measure and compare the footprints to appellant's shoe. Appellant cites *State v. Murphy*, 356 Mo. 110, 201 S.W.2d 280 (banc 1947) to support this proposition. In that case, however, the state tried to prove that two separate sets of footprints in two separate locations were similar without presenting any measurements or other scientific comparisons.

The case under review does not present the problem of comparison of separate sets of footprints, but rather a trail leading from the scene of the crime to the appellant. The court in *Murphy* said that in such circumstances scientific measurements need not be taken, "[I]f the tracks led from the scene of the crime to the accused, and *could* have been made by him, perhaps that fact might be shown from mere observation." *State v. Murphy, supra*, 201 S.W.2d at 283 (emphasis in original). Clearly, the footprints here could have been made by appellant. Therefore, the jury could have rea-

sonably given the evidence of the footprints probative weight without any presentation of scientific measurements or comparisons.

Appellant next argues that mere presence, opportunity, and flight are not sufficient to prove guilt. Appellant's strongest support for this position is *State v. Castaldi*, 386 S.W.2d 392 (Mo.1965). In that case the court held that the fact that Castaldi was with the perpetrators when they were committing the crime and then fled with one of the perpetrators after a police officer questioned the perpetrators was insufficient evidence to find Castaldi guilty of the crime.

The court found that the state presented no evidence from which it could be inferred that Castaldi participated in the crime in any way. *State v. Castaldi, supra* at 395. Second, the court found Castaldi's flight was consistent with a reasonable hypothesis other than consciousness of guilt. *State v. Castaldi, supra* at 395.

In the case under review, however, appellant's footprints leading to the point of entry combined with the snow and water inside of the broken into patio door and the evidence of the attempted robbery of the house present sufficient evidence to infer a perpetrating act by appellant. Also, "[f]light is a circumstance to be considered against an accused in connection with other evidence of the commission of a crime." *State v. Castaldi, supra* at 395[4–5]. Appellant's flight is inconsistent with any hypothesis other than consciousness of guilt. *Castaldi* is clearly distinguishable. This court finds the state presented sufficient, substantial evidence to support a finding that appellant was guilty of burglary in the second degree.

Appellant, in his second point, asserts he was denied a fair trial because the court erred in refusing to give appellant's proposed instruction on trespass in the first

degree as a lesser included offense. This point is also ruled against appellant.

The requested instruction should have been given if trespass in the first degree is a lesser included offense of burglary in the second degree, and if the evidence presented a basis for acquitting appellant on the offense charged and convicting appellant of the included offense. § 556.046.2, RSMo 1978.

Where the evidence of appellant's guilt is strong and substantial, however, and clearly shows the commission of a more serious crime, it is unnecessary to instruct on the lesser included offense. *State v. Craig*, 433 S.W.2d 811, 815–816[6, 7] (Mo. 1968); *State v. Neighbors*, 613 S.W.2d 143, 148 (Mo.App.1980); *State v. Harris*, 598 S.W.2d 200, 203[6–9] (Mo.App.1980). In a non-homicide case the evidence must arguably show a lack of an essential element of the greater offense before the trial court must instruct on the lesser included offense. *State v. Harris, supra; State v. Pride*, 567 S.W.2d 426, 431[5, 6] (Mo.App.1978). There was no evidence on behalf of appellant to show the lack of an essential element of burglary in the second degree.

This court need not determine whether trespass in the first degree is a lesser included offense of burglary in the second degree[1] because the state's evidence of appellant's guilt is strong and substantial, and does not show a lack of an essential element of burglary. The trial court therefore did not err in refusing appellant's proposed instruction.

The judgment is affirmed.

CRIST, P. J., and REINHARD, J., concur.

---

1. Prior to the enactment of the new criminal code trespass was not a lesser included offense of burglary in the second degree. *State v. Smith*, 592 S.W.2d 165, 166[4] (Mo. banc 1979). The Missouri Court of Appeals, Western District, has recently ruled that under the new code trespass in the first degree is a lesser included offense of burglary in the second degree. *State v. Neighbors*, 613 S.W.2d 143, 147 (Mo.App.1980). The trial court ruled properly, regardless of whether trespass is an included offense. Therefore, this court does not have to consider the issue at this time.